UNITED STATES of America

v.

FIVE (5) COIN-OPERATED GAMING DEVICES AND CONTENTS ($63.75)

Civ. No. 9307.

United States District Court
D. Maryland,
Civil Division.
Sept. 23, 1957.

Leon H. A. Pierson, U. S. Atty., and John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., for the United States.

Ellsworth T. Simpson, Washington, D. C., and Frank L. Anderson, Riverdale, Md., for claimants.

THOMSEN, Chief Judge.

The government seeks the condemnation and sale, under 26 U.S.C.A. § 7302, of five gaming devices and contents on the ground that the special tax imposed by sec. 4461 had not been paid by the person who maintained them for use or permitted their use on premises occupied by him, as required by secs. 4461 and 4901.[1] Claimants Voglino and Willett contend that the machines are not "property intended for use in violating the provisions of the Internal Revenue Laws, or regulations prescribed under such laws", and were therefore not subject to seizure and forfeiture under sec. 7302.

The material portions of the sections referred to above are as follows:

"§ 4461. *Imposition of tax*

"There shall be imposed a special tax to be paid by every person who maintains for use or permits the use of, on any place or premises occupied by him, a coin-operated amusement or gaming device at the following rates:

\* \* \* \* \* \*

"(2) $250 a year, in the case of a device defined in paragraph (2) of section 4462(a); \* \* \*"

"§ 4901. *Payment of tax*

"(a) *Condition precedent to carrying on* certain business.—No person shall be engaged in or carry on any trade or business subject to the tax imposed by section 4411 (wagering), 4461(2) (coin-operated gaming devices), 4721 (narcotic drugs), or 4751 (marihuana) until he has paid the special tax therefor.

"(b) *Computation.*—All special taxes shall be imposed as of on the

1. All section references in this opinion are to the Internal Revenue Code (1954), Title 26 U.S.C.A. (1955 Ed.)

first day of July in each year, or on commencing any trade or business on which such tax is imposed. In the former case the tax shall be reckoned for 1 year, and in the latter case it shall be reckoned proportionately, from the first day of the month in which the liability to a special tax commenced, to and including the 30th day of June following.

"(c) *How paid.*—

"(1) *Stamp.*—All special taxes imposed by law shall be paid by stamps denoting the tax."

"§ 7302. *Property used in violation of internal revenue laws.*

"It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. * * *"

The machines were seized by agents of the Internal Revenue Service on June 28, 1956.

On July 1, 1955, and for ten months thereafter, Voglino owned a building in Waldorf, Charles County, Maryland, in which he operated a business known as "Curley's Restaurant and Tavern". In connection with this business he maintained the five gaming devices in question, commonly called "one-arm bandits". He purchased in his own name, at a cost of $250 each, the excise tax stamps required by secs. 4461 and 4901, for the period from July 1, 1955 to June 30, 1956.

On May 1, 1956, Voglino leased the premises to Willett, who operated the business after June 12, 1956, the date on which the liquor license was transferred to his name. Although there was a provision in the lease that the parties were to share in the profits of the coin-operated devices, it is not disputed that after June 12, 1956, Willett was the person who maintained the devices for use or permitted their use on premises occupied by him, within the meaning of sec. 4461 and who engaged in or carried on the business within the meaning of sec. 4901.

However, Willett did not purchase any stamps nor pay the tax in respect of these machines for the month of June, 1956, as required by those sections. Three other gaming devices, seized on the premises at the same time, but not involved in this case, bore no stamps at all. On June 16, 1956, stamps for the year July 1, 1956 to June 30, 1957 had been purchased for all eight machines: for the five involved in this case in the name of Voglino, and for the other three in the name of Willett. This was apparently done in an attempt to evade the local law in Charles County, which would have permitted Voglino to maintain five gaming devices if he had remained in charge of the premises, but limited Willett as a new licensee to three such devices. See Laws of Maryland, 1951, ch. 183, sec. 84D(a) and (b).

On July 2, 1956, the five stamps issued to Voglino for the period July 1, 1956 to June 30, 1957 were transferred to the name of Willett; this permitted Willett to use the stamps on devices obtained as replacements for the five seized machines.

Voglino and Willett admit that Willett was obligated to pay a tax for the month of June, 1956, in respect of the five machines seized in this case; but Voglino testified that they did not know this at the time, and believed that the payment by Voglino of a tax in respect of those machines for the year ending June 30, 1956, obviated the necessity of Willett paying any tax for the month of June, 1956. Willett did not testify. Claimants contend that they had no intention of violating the Federal law and, therefore, that the machines were not subject to seizure and forfeiture.

**734**

In view of the facts set out above, I doubt their good intentions. But even if claimants had no intention of violating the Federal law, and misunderstood its purpose and effect, it does not follow that the machines were not subject to seizure and forfeiture. Sec. 4901(a) clearly provides that no person shall be engaged in or carry on any trade or business subject to the tax imposed by any one of a number of sections, including sec. 4461(2), until he has paid the special tax therefor. When a person commences any such trade or business during the fiscal year, sec. 4901(b) provides that the tax shall be reckoned proportionately, from the first day of the month in which the liability to a special tax commenced. Payment of the tax is required prior to engaging in the business. Lewis v. United States, 348 U.S. 419, 421, 75 S.Ct. 415, 99 L.Ed. 475; United States v. Ferro, D.C.Conn., 126 F.Supp. 958. See also United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754.

█ Sec. 7302 begins: "It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property." The word "intended" in that sentence does not refer to an intention to evade the tax, but to the use to which the machines are to be put, if they have not already been so used. If a machine is intended to be used for gaming purposes, and the operator of the business has not paid the tax, it may be seized and forfeited, even though the government may not be able to prove that the particular machine has been so used. The operator's intention with respect to paying the tax is immaterial; the question is whether he has paid it.

In the instant case, Willett had not paid the tax imposed on him as the operator of the business during June, 1956. The gaming devices were subject to seizure and forfeiture on June 28, 1956, and the relief prayed by the government must be granted.